## J. V. Gastaldi, Plaintiff-Appellant, v. C. C. Reutermann, Defendant-Appellee.

### Term No. 51-O-14.

Opinion filed January 11, 1952. Released for publication March 12, 1952.

WESLEY LUEDERS, and RANDALL ROBERTSON, both of Granite City, for appellant.

HARRY FAULKNER, of Granite City, for appellee.

MR. JUSTICE BARDENS delivered the opinion of the court.

This is an appeal by plaintiff-appellant (hereinafter called plaintiff) from a judgment for the defendant-appellee (hereinafter called defendant) by the circuit court of Madison county, the case being heard by the court without a jury. The action was based on a written contract and sought to recover the stipulated compensation of $2,000 for services rendered in case of the defendant's failure to proceed with the erection of an automobile salesroom and garage for which construction plaintiff was to act as general superintendent and supervisor.

The salient facts are substantially uncontroverted. The plaintiff, an established builder and general contractor, submitted a bid for the construction of defendant's salesroom and garage based upon a set of plans prepared by a licensed architect retained by defendant. Plaintiff's bid of $145,000, along with the bids of other contractors, exceeded defendant's desired construction cost. Defendant advised the plaintiff that he would like to limit the cost to $50,000 to $60,000. Plaintiff thereupon drove defendant to various cities in Illinois and Missouri to view other salesrooms and garages in an attempt to secure ideas for a structure meeting defendant's needs and desired financial outlay. As a result of such trips plaintiff made penciled sketches of ideas to be incorporated in the proposed building but informed defendant that he was not an architect and could not prepare a new set of plans for the construction of the garage. Plaintiff, with the defendant's knowledge and consent, thereupon took the sketches to the architect who had drawn the original plans and agreed to pay him $1,000 for a new set of drawings, the payment conditioned upon the erection of the garage. The architect testified that the plaintiff's

sketches could not be called plans in any sense of the word and that he undertook the job with the intention of not only preparing the plans but of supervising the construction architecturally by seeing that the garage was erected in conformity with the plans and specifications. Plaintiff held numerous conferences with defendant and the architect and met with defendant and the factory representative. A written contract was thereupon entered into at defendant's request for the purpose of establishing with the factory his intention of building a new salesroom. The contract in essence provided that plaintiff was to act as a general superintendent and supervisor of the erection of a garage for defendant in accordance with the drawings and specifications of the licensed architect; that plaintiff was also to assist in purchasing and arranging for materials and labor; that he was to receive as compensation 10% of the total cost of the construction, or in the event defendant chose not to proceed with the building, within 30 (later changed to 45) days plaintiff was to receive $2,000 in full payment for all services rendered. Defendant elected not to proceed with the construction and declined to pay plaintiff the stipulated compensation for services rendered.

Defendant filed an affirmative defense to plaintiff's complaint predicated upon the theory that the services contracted for and performed by the plaintiff constituted the practice of architecture under the statutes of this State, and the plaintiff not being a licensed architect, the contract is void as based upon a promise to perform an unlawful act. The plaintiff filed his reply thereto in effect denying that the services he was to perform were architectural services.

██ Section 2, chapter 10½, Illinois Revised Statutes 1949 [Jones Ill. Stats. Ann. 6.02], defines in explicit terms the practice of architecture as "the planning or supervision of the erection, enlargement or

alteration of any building or buildings or of any parts thereof, to be constructed for others.'' Section 4 [Jones Ill. Stats. Ann. 6.04] relaxes the previous section by providing in part that nothing contained in the Act shall ''prevent the employment of superintendents of the construction, enlargement or alteration of buildings or any parts thereof, or prevent such superintendents from acting under the immediate personal supervision of the registered architect by whom the plans and specifications of any such building, enlargement or alteration were prepared.'' Defendant's theory of the case seems to be based upon the contention that there are two categories into one of which the contract in issue must fall: it is either a building contract or a contract calling for architectural services. He then urges that it is clearly not a building contract since neither the plaintiff or defendant bound themselves to erect a building, and that it is therefore an architectural contract and consequently unenforceable because plaintiff is not a licensed architect. We believe that such contention overlooks the category of ''superintendents of the construction'' provided for under section 4. Special employment of this character is clearly permissible under the statute whether such superintendent be employed by the architect or the owner. *Taheny v. Catholic Bishop of Chicago*, 304 Ill. App. 581, 26 N. E. (2d) 667 (Abstract Opinion). Nor can we see any meaningful distinction between the employing of the architect by the owner directly or by the contractor or superintendent of construction with owner's consent. The significant inquiry is as to whether or not supervision of the construction by a licensed architect is contemplated or had. Section 4 clearly shows that the legislature did not intend that such architectural service should necessarily preclude any other supervising of the construction, for there obviously exists the necessity of day to day, perhaps

hour to hour, supervision of the construction which is separate and distinct from the architect's service.

From the evidence it appears uncontradicted that plaintiff at no time held himself out to be an architect and that defendant dealt with him with full knowledge that he was a general contractor; it appears further that the licensed architect who drew the plans intended to inspect and supervise the construction in accordance with standard architectural practice. Nor does the contract call for the rendering of architectural service by the plaintiff, either literally or by necessary implication. This factor alone sufficiently distinguishes *Keenan v. Tuma*, 240 Ill. App. 448, upon which principal reliance is placed by the defendant. In that case a contract employing the plaintiff "architecturally to prepare the necessary plans, drawings and specifications" was declared unenforceable because plaintiff was not a licensed architect. Not only did the contract itself characterize the services to be rendered as "architectural" but the evidence showed that there was no supervision of the construction by a licensed architect and that such service was performed by the plaintiff. These factors present a completely different case from that made by the evidence on this appeal.

 Further support for the construction of the statute contended for by the plaintiff is to be found in the purpose of the Architecture Act. In *People ex rel. State Board of Examiners of Architects v. Rodgers Company,* 277 Ill. 151, 115 N. E. 146, the court said:

"The object of this statute was not to protect architects merely by limiting the work to those that possess a license. The real purpose of the statute is the protection of the public against incompetent architects, from whose services damage might result to the public by reason of dangerous and improperly constructed buildings and by badly ventilated and poorly lighted buildings."

514

Examined in the light of this statement, the evidence before us presents a situation satisfying the statute in the fact of the employment of a licensed architect and his intended supervision of the construction.

We conclude that the trial court erred in rendering judgment for the defendant. The judgment is, therefore, reversed and the cause remanded to the lower court with directions to enter judgment in plaintiff's favor for the sum of $2,000 and costs.

*Judgment reversed and remanded with directions.*

CULBERTSON, P. J. and SCHEINEMAN, J., concur.