Continental Paper Grading Company, Plaintiff-Appellee, v. Howard T. Fisher and Associates, Inc., Defendant-Appellant.

Gen. No. 46,314.

118

Opinion filed June 21, 1954. Rehearing denied July 26, 1954. Released for publication July 26, 1954.

THOMAS H. FISHER, and NORMAN CRAWFORD, both of Chicago, for appellant.

HARRY H. RUSKIN, and JOSEPH ROSENBAUM, both of Chicago, for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Continental Paper Grading Company, a corporation, filed a complaint against Howard T. Fisher & Associates, Inc. (hereinafter called the defendant) and Edwin H. Mittelbusher for a judgment declaring the rights of the parties under a written agreement made on April 9, 1948, and the determination of their rights thereunder involving the construction and application of the Illinois Architectural Act [Ill. Rev. Stats. 1953, ch. 10½, § 1 et seq.; Jones Ill. Stats. Ann. 6.01 et seq.]. Defendant answered and filed a counterclaim for damages against plaintiff and Mittelbusher. They filed answers to the counterclaim and Mittelbusher filed a counterclaim against defendant. By subsequent amendment to the answer defendant alleged that the Illinois Architectural Act is unconstitutional. The trial of the issues between the corporations, without a jury, lasted six weeks. The trial judge gave a written opinion and directed that it be included in any report of proceedings. He analyzed the evidence, made findings of fact and held that the agreement constituted a violation of the Architectural Act and that none of the parties had any rights thereunder. The court made findings and judgments for the plaintiff and against the defendant on the complaint and for the counter-defendant and against the counterclaimant on Count 1 of its counterclaim. Defendant prosecuted a direct appeal to the Supreme Court on the theory that a constitutional question was involved. The court held that

the record disclosed that any question in regard to the construction of the Constitution was waived by the defendant and transferred the cause. (1 Ill.2d 37.) Mittelbusher is not a party to the appeal.

At all pertinent times Mittelbusher and Fisher, president of defendant, were registered architects under the Act. The contract of April 7, 1948 contemplated architectural services by the defendant in the construction of a building for plaintiff in Chicago. Mittelbusher was one of several registered architects associated with defendant in the practice of architecture. On June 18, 1948 Mittelbusher resigned as vice president of defendant and severed his connection with it. Thereafter Mittelbusher and defendant performed various services for plaintiff in carrying out the April contract. Defendant submitted several bills for architectural services to plaintiff, some of which were paid. A contract dated June 18, 1948 between Mittelbusher and defendant and accepted on August 17, 1948, provided that Mittelbusher would continue to perform for defendant the remaining architectural services required to be performed by defendant for the plaintiff under the April 1948 contract. Under the August 1948 contract Mittelbusher agreed to render all services in substantially the same manner as theretofore but subject to defendant's direction and approval, and that he, Mittelbusher, would act as an independent contractor and associate architect. The contract of August 1948 also stated: "In rendering your [Mittelbusher] said future services to our corporation [defendant], you agree to take the major responsibility for directing the remaining work required of our corporation relative to the completion of said projects [plaintiff's project and others]." The August 1948 contract also provided that Mittelbusher would not compete with defendant for approximately six months from August 17, 1948, by rendering any architectural services di-

rectly to any of defendant's clients other than those on an attached list, and he also agreed not to seek, accept or perform any work or render any service directly to plaintiff described in the April 1948 contract until the expiration of a six months' period following substantial completion of the project covered by that agreement and until full payment had been made therefor to defendant, or until the expiration of one year from completion.

Plaintiff maintains that since the testimony and plans are not preserved in the record on appeal we are obliged to presume that the evidence was sufficient to justify the finding and judgment that the transaction was in violation of the Illinois Architectural Act. We are called upon to pass on issues of law determinable from the record before us. Supreme Court Rule 36 contemplates that in some cases taking up the entire record by appellant is unnecessary. Where the record on appeal contains sufficient facts to try the questions of law raised by the appeal, the record is sufficient. *Brown v. Schintz,* 202 Ill. 509; *City of Staunton v. Bond,* 281 Ill. 568; *Lawn View Building Corp. v. Weinstock,* 288 Ill. App. 320; *Daubach v. Drake Hotel Co.,* 243 Ill. App. 298; *Carlyle v. Bartels,* 245 Ill. App. 153.

The trial court held and plaintiff maintains that the April agreement is in violation of the Architectural Act and therefore illegal and void. The court's view was that since Howard T. Fisher was the chief executive officer of defendant and the evidence established that the parties contemplated that Mittelbusher was to have the sole responsibility for the performance of the architectural services to be done by defendant, and the services were performed exclusively by Mittelbusher and not under the personal supervision and direction of Howard T. Fisher, defendant's chief executive officer, the contract contemplated the performance of

123

the architectural services by the defendant in an illegal manner and against public policy and was therefore void and that no rights or obligations were created thereunder, leaving the parties as the court found them, with no rights or obligations by either against the other in the contract or for recovery for the work done or moneys paid under the contract, and declaring that to the extent it was executory it had no effect. Plaintiff asserts that after the resignation on June 18, 1948 of Mittelbusher as an officer of defendant, it became impossible for defendant to utilize the plans theretofore prepared by Mittelbusher without being in express violation of the statute, although he continued to perform his architectural services for plaintiff thereafter without any official capacity with defendant and without any supervision by defendant's chief executive officer. Plaintiff states that section 3 of the Illinois Architectural Act [Ill. Rev. Stats. 1953, ch. 10½, § 3; Jones Ill. Stats. Ann. 6.03] makes it lawful for corporations to prepare only plans and drawings for buildings and structures to be constructed or whose construction is to be supervised by it, if its chief executive officer is a registered architect, and the plans for such building or structure were prepared by him or under his supervision and bear his official seal, and the "supervision of the building is actually supervised by such officer." The trial court found that it was contemplated in the agreement and by the acts of the parties that someone other than the chief executive officer of defendant was to perform his personal statutory duties, and that the April contract was illegal and void.

Plaintiff's theory had originally been that it had been contemplated that the architectural services contracted for were to be performed by Mittelbusher himself and no others, he being the only person connected with defendant who was known to plaintiff's officers. Plain-

tiff says that the evidence is clear that the plans and drawings were prepared by Mittelbusher and submitted to plaintiff prior to June 18, 1948. On June 18, 1948 Mittelbusher resigned as an employee of defendant and thereafter practiced architecture independently in his own separate office. After June 18, 1948 Mittelbusher was no longer in any position of authority with defendant and could not qualify as his chief executive officer or managing agent. Plaintiff's position is that when Mittelbusher resigned it was no longer possible that the plans which it (plaintiff) had theretofore received could be utilized lawfully, as the defendant thereby made it impossible for it to proceed with any construction or alteration or supplement of the same plans when Mittelbusher was not defendant's chief executive officer or managing agent. Plaintiff states that consequently the plans theretofore submitted and on account of which payment had been made became worthless and unusable, and defendant was disqualified under the statute from having any other or subsequent chief executive officer perform its services according to those plans. Plaintiff asserts that defendant was seeking to practice architecture through the services of Mittelbusher both before and after the termination of his employment and resignation in a manner prohibited by the Act, and that whether the case be viewed from the position taken by the trial judge or from the position of plaintiff in its complaint, the rights declared in the judgment are sustainable.

We are in agreement with plaintiff in its position that whenever the illegality appears, whether or not pleaded, the court will enter no judgment recognizing or enforcing its terms. *Vock v. Vock,* 365 Ill. 432, 436. The court sustained the objection of the defendant to the filing of an amendment raising the question of illegality of the April agreement, but then expressed its opinion that it might on its own motion

125

so hold. Subsequently, the court held that the April agreement was invalid and unenforceable. Section 3 of the Architectural Act says nothing prohibitory about a corporation's contract to furnish architectural services to others. Its language is permissive. It authorizes corporations to perform certain acts providing that at the future time when such acts are performed, certain corporate officials shall be registered architects, certain supervision shall be performed by them and certain plans shall be prepared and stamped by them with their official seal. If such acts "shall be" carried out by the corporations in the permitted manner at the time they are performed, section 3 is satisfied whether or not such acts are performed in accordance with a prior contract or if there had been no prior contract at all. The Act does not prohibit the making of a corporation's contract to furnish architectural services. The construction of the Act sought by plaintiff is so restrictive as to defeat the intent of the legislature. There is no contention in the instant case that the architects who performed the services under the April contract were incompetent. They were registered architects. In *People v. Rodgers Co.*, 277 Ill. 151, our Supreme Court said that the object of the architectural statute then in effect was not to protect architects merely by limiting the work to those who possessed a license, and that the real purpose of the statute is "the protection of the public against incompetent architects, from whose services damage might result to the public by reason of dangerous and improperly constructed buildings and by badly ventilated and poorly lighted buildings." We conclude that section 3 of the Architectural Act means that any contract is valid thereunder if at the time the contract is made the chief executive officer or officers, whether he or they be president or vice president, then acting,

126

or if the managing agent or agents, then acting, of the corporation is or are registered architects, and that the words "supervision," "personal supervision" and "personal direction and supervision" mean supervision by a registered architect in the sense that such architect shall have and exercise the general duty of overseeing the work regardless of who shall actually perform the executive function of directing the subordinates or other personnel regularly or specially employed by the corporation to act and actually acting under such general over-all directive authority of the registered architect. We construe section 3 of the Act to mean that the supervision of planning and construction of buildings and structures as defined in the Act, shall be under the over-all supervision of a registered architect. The president (Fisher) and the vice president (Mittelbusher) of defendant were registered architects. We find that the April agreement was not invalid and that the court erred in so holding.

■ The trial judge held that the effect of his determination that the April agreement was invalid eliminated the application of that agreement between defendant and Mittelbusher and that there was no impediment to dealings between plaintiff and Mittelbusher. The noncompeting clause was valid. See *Storer v. Brock,* 351 Ill. 643; *Smithereen Co. v. Renfroe,* 325 Ill. App. 229. We find that the part of the judgment freeing plaintiff and Mittelbusher from the noncompeting clause of the June 1948 agreement is erroneous.

■ Plaintiff states that no error is preserved for review with respect to the judgment rendered in its favor on Count 1 of defendant's counterclaim and that the judgment on the counterclaim should be affirmed. Plaintiff further argues that any reversal of the judg-

ment on its complaint would not be efficacious by reason of the judgment on the counterclaim which would be *res judicata* against defendant, and that the entire judgment should be affirmed. The appeal is from the entire judgment, which included the judgment on the counterclaim. Under section 80 [Ill. Rev. Stats. 1953, ch. 110, § 204; Jones Ill. Stats. Ann. 104.080] of the Practice Act no formal exception need be taken to any ruling of the court in order to make such ruling a ground for review. In its complaint plaintiff prayed that the April contract be declared terminated and also that the court declare that plaintiff was not indebted to defendant in any sums whatsoever. In Count 1 of the counterclaim the defendant asked damages for a breach of the April contract. The judgment on the counterclaim was an integral part of the declaratory judgment. Our views on the issues made by the complaint and the answer are applicable to the issues made by the counterclaim and the answer thereto. As the entire judgment should be reversed, there is no occasion for the application of the doctrine of *res judicata*.

For the reasons stated the judgment of the circuit court of Cook county is reversed and the cause is remanded with directions to proceed in a manner not inconsistent with the views expressed.

*Judgment reversed and cause remanded with directions.*

NIEMEYER and FRIEND, JJ., concur.