ARKANSAS STATE BOARD OF ARCHITECTS *v.*
BANK BUILDING & EQUIPMENT CORP. OF AMERICA.

5-794                                          286 S. W. 2d 323

Opinion delivered January 30, 1956.

*Mehaffy, Smith & Williams, B. S. Clark,* for appellant.

*Harry S. Kramer, Jr.; Rose, Meek, House, Barron* and *Nash,* for appellee.

ED. F. McFADDIN, Associate Justice. The issue posed on this appeal is whether the appellee has engaged in the practice of architecture in violation of Act 270 of 1941 (now found in § 71-301 *et seq.,* Ark. Stats.)

Appellant, Arkansas State Board of Architects (hereinafter called "Board"), filed suit to enjoin[1] appellee, Bank Building & Equipment Corporation of America (hereinafter called "Building Corporation"), from continuing to engage in certain activities which the Board alleged to be the practice of architecture and in violation of said Act 270. The Chancery Court held that the activities of the Building Corporation did not amount to the practice of architecture and dismissed the complaint; and from that decree the Board brings this appeal presenting the issue[2] as first stated above.

The evidence established that the Building Corporation is domiciled in St. Louis, Missouri, and qualified as a foreign corporation in this State; but is not licensed to engage in the practice of architecture under Act 270 of 1941 (§ 71-301 et seq., Ark. Stats.); that the Building Corporation specializes in constructing bank buildings and planning and constructing the interiors thereof, and has an architectural department as an integral part of its business; that Mr. W. G. Knoebel — licensed as an architect in Arkansas — is the Chief Architect of the Building Corporation, and is the head of a staff of about two hundred persons in the architectural department of the Building Corporation; that none of these two hundred— except Mr. Knoebel — is licensed in Arkansas; that the general plan used by the Building Corporation, in obtaining and performing its contracts, is as follows: it solicits a bank that contemplates constructing a building or rearranging the interior thereof, and persuades the bank to sign a "survey agreement" in which the bank is

---

[1] Whether injunctive relief would be proper need not be considered because the parties have not raised the question and because the pleadings and record present a proper case for a declaratory judgment which could have brought the issue to a focus. See *Culp* v. *Commissioner of Revenues, ante* page 749, decided December 19, 1955.

[2] So far as our search discloses, this is the first case before us involving the said Act 270. Since neither side has raised any question concerning the constitutionality of the Act, we likewise by-pass that potentiality; but it is appropriate to mention that in 3 Am. Jur. 998, in discussing the licensing of architects, the text states the holdings of cases in these words: "In many States statutes are enforced which regulate architects in the practice of their profession. . . . It is well settled that the State may, in the exercise of the police power, thus regulate the profession. . . ."

designated as "owner" and the Building Corporation as "company"; and that the contract provides in part:

"1. Company shall consult with and advise Owner, and shall furnish suggestions and recommendations for proposed improvements.

"2. Company shall designate a qualified and registered architect to perform all architectural services that may be necessary in connection with the proposed work and improvements, and Company shall pay the architect for such services.

"3. Architect shall perform all architectural work, including preparation of all preliminary and working drawings, plans and specifications, and shall furnish Company all necessary data for preparation of survey.

"4. Periodic inspection trips shall be made as required, but not less than once each month during the progress of the job. These without charge and in addition to the trips for the awarding of contracts.

"5. Architect shall prepare Proposals and Contracts incidental to the work, issue certificates of payment, and keep proper and adequate records.

"6. The fee payable by Owner to Company shall be ...... per cent (.........) of all Architectural Work planned, including building improvements, mechanical work, interior equipment, furnishings and vault equipment . . ."

Here are excerpts from the testimony of the President of the Building Corporation regarding its activities under the contract:

". . . we go into a bank . . . and make a complete analysis of their entire operation; after we have completed that analysis we make the necessary recommendations to improve the work flow, the type of equipment that might be more efficient, and that is an extensive part of that survey agreement . . . then the architect takes over and makes the necessary plan to show the man what can be done to give them efficient work space.

"Q. When does the architect first come into the picture?

"A. He comes into the picture immediately on the necessity of any plan being done . . . The architectural department then has a meeting with our planning board, which consists of five men in the organization, of which the architect is one, and we make a complete analysis of what is going to be required . . . Then it goes into the architectural department to make the plans along the lines of that budget so when it is completed it will be practical for the bank to proceed with the operation . . .

"Q. Suppose the owner at that point decides to take competitive bids?

"A. We step out and continue to operate under our survey agreement . . .

"Q. If the owner decides to open it up to competition, you do not compete in the bidding?

"A. No, we step out of the picture and retain our status and Mr. Knoebel then takes over and performs the architectural services . . .

"Q. What is Mr. Knoebel's full name?

"A. Wilbur G. Knoebel. . . .

"Q. In what capacity is he employed?

"A. Chief architect of the Architectural Department.

"Q. Is he a full time employe?

"A. Yes, sir.

"Q. How many architects does he have working under him, licensed architects? You said he had 200 in his department . . . Do you know how many are licensed in Arkansas?

"A. Just one.

"Q. Mr. Knoebel?

"A. Yes . . .

"Q. Does Mr. Knoebel go personally — does he come personally to Arkansas on each of your jobs, or would he send one of the men under him?

"A. In most cases he would send a man under him. He does make trips in many cases.

"Q. You pay Mr. Knoebel a salary, I presume?

"A. He works on a salary and a fee basis; he gets a percentage of fees, depending on the volume.

"Q. Nevertheless, he can be discharged by your company at any time, couldn't he?

"A. If his services were unsatisfactory, yes, sir . . .

"Q. Who would receive his fee?

"A. Our survey agreement would provide for us getting the fee.

"Q. Your company would get the fees and your company would pay Mr. Knoebel according to your arrangements with him?

"A. That is right."

Under the above testimony of its President, it is clear that the Building Corporation is contracting in this State to furnish architectural services for constructing banks and rearranging the interiors thereof; that it has a staff of about two hundred architects to perform such service; that only one of these — Mr. Knoebel — is licensed in Arkansas to practice the profession of architecture; that he works for the Corporation as an employee; and that he details the inspection and supervision work to his subordinates, none of whom is licensed under the Arkansas law.

The Act 270 of 1941 provides in Section 2:

". . . no person shall practice architecture in this State, or engage in preparing plans, specifications, or preliminary data for the erection or alteration of any

building located within the boundaries of this State, or use the title 'architect' . . . unless such person shall have secured from the Examining Body a certificate of registration and license in the manner hereinafter provided . . ."

The appellee, Building Corporation, does not come within any exemption provided in Sub-section 2 of said Section II of the Act; and sub-section 3 of Section II of the Act provides:

"No corporation shall be licensed or registered to practice architecture in this State unless the principal of such corporation whose name appears in the corporation's name is a registered architect, and providing also that each such principal is so registered."

Thus the appellee, Building Corporation, as such, could not be authorized to practice architecture in this State, since Mr. Knoebel's name does not appear in the name of the Corporation. An architect is one whose occupation it is to form and devise plans and designs and draw up specifications for buildings or structures and to superintend their construction. In the case of *McGill* v. *Carlos,* Ohio Com. Pl. 81 N. E. 2d 726, one of the Ohio courts, in discussing the practice of architecture, used this pertinent language:

"Primarily, an architect is a person who plans, sketches and presents the complete details for the erection, enlargement, or alteration of a building or other structure for the use of the contractor or builder when expert knowledge and skill are required in such preparation. The practice of architecture may also include the supervision of construction under such plans and specifications. See Webster's New International Dictionary; the New Century Dictionary; 3 Ohio Jur., Sec. 1, page 115; Kansas City Southern R. Co. v. Wallace, 38 Okl. 233, 132 P. 908, 46 L. R. A., N. S., 112; 3 Amer. Jur. Sec. 2, page 998."

The foregoing is exactly what the Building Corporation is doing under its contract and under the testimony of its

President and it is, therefore, acting in violation of the Arkansas Legislative Enactment here involved.

In answer to the appellant's contentions the appellee says: "We search the statute in vain for any language which would prohibit the appellee from agreeing to designate a qualified architect." In other words, the appellee contends that all it does is to designate Mr. Knoebel and that he is licensed. But the appellee, Building Corporation, is doing far more than a mere designation. It contracts with the "owner" to furnish plans and specifications (and it has a staff of two hundred employees in its architectural section to draw these plans); and then it provides the supervision of the construction. In short, the appellee, Building Corporation, is agreeing to have its own employees do the architectural work. The fundamental legal principle of agency — "*qui facit per alium, facit per se* (he who acts through another acts by himself)" — when applied here, proves that the Building Corporation is not merely "agreeing to designate a qualified architect": rather it is employing a staff of two hundred architects and it is engaged in the practice of architecture.

The appellee, Building Corporation, cannot hide behind the mask, that it has one architect licensed to practice in Arkansas; because the evidence shows that Mr. Knoebel acts in an advisory capacity over a staff of two hundred persons in the architectural department, and that he designates some of them — each of whom is unlicensed — to help fulfill the contracts that the appellee, Building Corporation, has in this State. We held in *Arkansas Bar Assn.* v. *Union National Bank,* 224 Ark. 48, 273 S. W. 2d 408, that if a bank should furnish the services of attorneys to its customers, the bank would be engaging in the practice of law. By the same token, appellee, Building Corporation, by furnishing the services of architects to its customers, is engaging in the practice of architecture.

Appellee cites cases from other States to justify its activities in Arkansas. Some of these cases are: *Joseph* v. *Drew,* 36 Cal. 2d 575, 225 Pac. 2d 504; *Walter M. Bal-*

*lard Corp.* v. *Dougherty,* 106 Cal. App. 2d 35, 234 Pac. 2d 745; *Baer* v. *Tippett,* 34 Cal. App. 2d 33, 92 Pac. 2d 1028; *Castaldi* v. *Reutermann,* 345 Ill. App. 510, 104 N. E. 2d 115; and *Continental Paper Grading Co.* v. *Howard T. Fisher & Associates,* 3 Ill. App. 2d 118, 120 N. E. 2d 577. But each of these cases from another State is based on a Statute different from our own. For instance, the California Statute, on which the cases from that State were based, allows a corporation to be licensed as an architect (see Sec. 5535 of the Business and Professional Code of California). The California Code also allows an unlicensed person to draw plans, specifications and drawings, provided such unlicensed person informs the other party in writing that the unlicensed person is *not* an architect (see Sec. 5537, Business and Professional Code of California). Thus the cases from other States are of little value to us in passing on our particular Statute as it is not shown or claimed that our Statute was borrowed from any other State.

It is not for this Court to consider the wisdom of the Arkansas Legislative Enactment in going as far as it did: since no constitutional question is urged here — and none raises itself — our duty is to measure the act in the present case by the yardstick of the statutory language. When so measured it is clear that the appellee, Building Corporation, is violating the Arkansas Statute.

The decree is reversed and the cause is remanded for further procedure not inconsistent with this opinion.

Justice GEORGE ROSE SMITH not participating.

Justice WARD dissents.