## Robert HOLLOWAY *v.*
## ARKANSAS STATE BOARD of ARCHITECTS

CA 01-767 86 S.W.3d 391

Court of Appeals of Arkansas
Division I
Opinion delivered September 25, 2002

[Petition for rehearing denied October 30, 2002.]

*Hankins & Hicks,* by: *Stuart W. Hankins* and *A. Vaughan Hankins,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Warren T. Readnour,* Ass't Att'y Gen., for appellee.

OLLY NEAL, Judge. The Arkansas Supreme Court has remanded this appeal from the Pulaski County Circuit Court under the Administrative Procedures Act, Ark. Code Ann. §§ 25-15-201 *et seq.,* to this court for consideration on the merits after the supreme court concluded that this court erred in dismissing the appeal. *Holloway v. Arkansas State Bd. of Architects,* 348 Ark. 99, 71 S.W.3d 563 (2002). We affirm in part and reverse and remand in part.

The Board of Architects (Board) imposed a civil penalty of $5,000 on the appellant, Robert Holloway, an engineer, for violation of the Board's regulations prohibiting the practice of architecture without a license. Before the Board, appellant challenged the Attorney General's representation of the Board due to an alleged conflict of interest, challenged the Board's jurisdiction over him because appellant is not a licensed architect, challenged the constitutionality of Ark. Code Ann. § 17-15-203, which gives the Board the power to levy civil penalties, on the ground that the statute does not set guidelines for the Board in setting the amount

of the penalty to be levied or allow the Board to take into account mitigating factors, and challenged the definition of the practice of architecture found in Ark. Code Ann. § 17-15-102, contending that it is unconstitutionally vague because it conflicts with Ark. Code Ann. §§ 17-30-101 and 17-30-104, which exempt engineers practicing within the practice of engineering from the definition of the practice of architecture. The circuit court found that the statutes were constitutional and that the Attorney General did not have a conflict of interest in representing the Board. The circuit court also found that the Board's decision was supported by substantial evidence and was not arbitrary and capricious. The court; therefore, affirmed the Board's decision. Appellant argues on appeal that the trial court's decision affirming the Board is clearly erroneous. Within that point, appellant argues four sub-issue: (1) the cited statutes are unconstitutional because they are void for vagueness and as applied, (2) that the Board failed to make all necessary findings of fact, (3) that the penalty imposed on appellant is arbitrary, capricious, and an abuse of discretion, and (4) that the Attorney General should have been disqualified.

The standard of review in this area of the law is well-developed. Review of administrative decisions is limited in scope. Such decisions will be upheld if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *McQuay v. Arkansas State Bd. of Architects*, 337 Ark. 339, 989 S.W.2d 499 (1999). The appellate court's review is directed, not toward the circuit court, but toward the decision of the agency. That is so because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *Id.* The standard is consistent with the provisions of the Administrative Procedure Act, which requires that the scope of appellate review under the act be limited. *Id.*

The Board received a complaint from architect Timothy Yelvington concerning a warehouse/office building under construction in North Little Rock without a project architect. In this letter, Yelvington expressed his understanding that an architect was

needed where the cost of a project exceeded $100,000. Yelvington also identified appellant as being responsible for this project and stated that he wished to file a formal complaint with the Board. Based on Yelvington's letter, the Board issued an Order and Notice of Hearing, charging appellant with violating the provisions of Arkansas Code Annotated § 17-15-301 (Repl. 2001) by practicing architecture without a license. The factual allegations of the Order were that (1) appellant is not a licensed architect; (2) appellant prepared drawings and specifications for the project, a pre-engineered metal building with a dry-vit facade; (3) the approximate size of the project was 144 feet by 93 feet, with the building consisting mainly of office space with a small amount of storage; and (4) the primary purpose of the facility is for human occupancy or habitation and the cost is in excess of $100,000. The Board also set a hearing to determine whether the allegations were true.

Appellant submitted a letter in response to the Board's inquiries, and this letter was admitted into evidence. Appellant's letter stated that appellant had been a licensed engineer since 1966, that he had never had any problems with other design professionals, and that he considered the project to be within his proper realm of activity. He also described the project as a pre-engineered metal building "dressed-up" with a small amount of dry-vit.

There was only one witness at the hearing before the Board. John Harris, the Board's executive director, testified that he did not consider appellant's status as a licensed engineer because he was trying to determine whether appellant was a licensed architect. He testified that he would have proceeded with his investigation in the same manner, even if he had assumed appellant was a licensed engineer. Harris also testified that he concluded that the plans appellant drew for the project at issue were architectural in nature; the conclusion being based on the fact that the plans were for an office building rather than a manufacturing facility. Harris testified that he visited the building site, measured the building, and saw the inside of the building. He said the inside was finished

out with walls, floors, and ceilings and that there were interior walls for offices. Harris stated that he estimated that between twenty and twenty-five percent of the building was for storage. Harris testified that he did not speak to the owner of the building. The basis for Harris's investigation was his conclusion that the cost of the project was over $100,000. Harris concluded that this project cost over $100,000 based on calculation of the square-footage and the going rate in central Arkansas to build a metal building of between $85 and $100 per square foot. No evidence was offered on the actual cost of the project.

In its order, the Board adopted findings of fact as follows: (1) appellant is not a licensed architect; (2) appellant prepared drawings and specifications for the project, a pre-engineered metal building with a dry-vit facade; (3) the approximate size of the project was 144 feet by 93 feet, with the building consisting mainly of office space with a small amount of storage; (4) the primary purpose of the facility is for human occupancy or habitation and the cost is in excess of $100,000; and (5) the work performed by appellant was not incidental to the practice of engineering. The Board concluded that appellant's activity fell within the definition of the "practice of architecture," that appellant was practicing architecture without a license, and that appellant's actions were not incidental to the practice of engineering. The Board then levied a civil penalty on appellant in the amount of $5,000. This appeal followed.

For his first sub-issue on appeal, appellant argues that the statutes defining the practice of architecture and the practice of engineering are unconstitutionally vague because of an overlap in the definition of each statute.

To attempt to precisely define and delineate the practice of architecture as distinguished from the practice of engineering would be of doubtful assistance. *Barondon Corp. v. Nakawatase*, 196 Cal. App. 2d 392, 16 Cal. Rptr. 472 (1961); *see also Arkansas State Bd. of Architects v. Hawkins*, 69 Ark. App. 250, 12 S.W.3d 253 (2000) (Neal, J., concurring in part and dissenting in part).

■ ■ Arkansas Code Annotated section 17-15-301 (Repl. 2001) prohibits the practice of architecture without a license. The "practice of architecture" is defined in section 17-15-102(5)(A)(i) as the

> provision of, or offering to provide, those services hereinafter described in connection with the design and construction, enlargement, or alteration of a building or group of buildings, and the space within and surrounding such buildings, which is designed for human occupancy or habitation. The services referred to include planning, providing preliminary studies, designs, drawings, specifications, and other technical submissions, and administration of construction contracts.

*See also Arkansas State Bd. of Architects v. Bank Bldg. & Equip. Corp.*, 225 Ark. 889, 286 S.W.2d 323 (1956).

Arkansas Code Annotated section 17-15-302 (Repl. 2001) provides in pertinent part as follows:

> (a) The following shall be exempt from the provisions of this chapter: (1) Professional engineers duly licensed or registered, but only insofar as concerns work incidental to engineering practice, provided such persons do not use the designation "architect" or any term derived therefrom;
>
> . . . .
>
> (4) Residents of this state who do not use the title "architect" or any term derived therefrom, who act as designers for: . . . (C) Buildings whose total cumulative and fair market value to complete, not including site, does not exceed one hundred thousand dollars ($100,000);
>
> . . . .
>
> (b)(2) This exception shall only apply: . . . (B) If the total cumulative and fair market value to complete the new structures will not exceed the sum of one hundred thousand dollars ($100,000).

A similar exemption is also found in § 17-15-102(5)(A)(ii).

■ Arkansas Code Annotated section 17-30-101(4)(A) (Repl. 2001) provides:

(4)(A) "Practice of engineering" means any service or creative work, the adequate performance of which requires engineering education, training, and experience in the application of special knowledge in the mathematical, physical, and engineering sciences to services or creative work such as consultation, investigation, evaluation, planning, and design of engineering works and systems relating to the use of air, land, water, municipal and regional planning, forensic services, engineering teaching of advanced engineering subjects or courses related thereto, engineering surveys, and the inspection of construction for the purpose of assuring compliance with drawings and specifications, any of which embraces service or work, either public or private, in connection with any utilities, structures, buildings, machines, equipment, processes, work systems, or projects including such architectural work as is incidental to the practice of engineering.

Arkansas Code Annotated section 17-30-104 (Repl. 2001) provides:

The provisions of this chapter affirm the legal authority of an engineer licensed under its provisions to provide consultation, investigation, evaluation, planning, and design of buildings intended for accommodation of equipment, vehicles, goods, and/or processes or other utilitarian functions, with human occupancy including office space as required for the support of these functions, provided the engineer is practicing within his or her area of competency as defined by this chapter.

Section 17-15-102(5)(B) contains a similar affirmation of an engineer's authority.

■ At the hearing before the Board, in briefs to the circuit court, and on appeal here, appellant attempts to argue that the statutes defining the practice of architecture and the practice of engineering are unconstitutionally vague because of an overlap in the definitions. The Assistant Attorney General representing the Board argued at the hearing that the Board did not have authority to determine whether the statutes defining the practice of architecture and the practice of engineering were in conflict with each other. The hearing officer agreed with the Assistant Attorney

General. In a similar administrative agency case, *Arkansas Contractors Licensing Board v. Pegasus Renovation Co.*, 347 Ark. 320, 64 S.W.3d 241 (2001), the Arkansas Supreme Court held that a constitutional argument was not preserved for review because Pegasus did not get a ruling on it from the board. The court held that it was well settled that to preserve arguments for appeal, even constitutional ones, the appellant must obtain a ruling below. The court did not reach the merits of the argument.

In *Arkansas Health Services Agency v. Desiderata, Inc.*, 331 Ark. 144, 958 S.W.2d 7 (1998), the supreme court adopted the *Hamilton* rule. The *Hamilton* rule requires even constitutional issues to be raised at the Administrative Law Judge or Commission level because such issues often require an exhaustive analysis that is best accomplished by an adversary proceeding, which can only be done at the hearing level. *Hamilton v. Jeffrey Stone Co.*, 6 Ark. App. 333, 641 S.W.2d 723 (1982). If an agency fails to make adequate findings, the case may be remanded to the agency to correct any defects. *Nesterenko v. Arkansas Bd. of Chiropractic Exam'rs*, 76 Ark. App. 561, 69 S.W.3d 459 (2002). Because the Board did not rule on the constitutional issue, we remand the case to the circuit court with directions to remand to the Board for further fact finding and a ruling on the constitutional issues.

In his second sub-issue, appellant argues that the Board failed to make all necessary findings of fact. An administrative agency's fact-finding must be limited to evidence properly included in the administrative record. The record serves as the exclusive basis for agency actions in adjudicative proceedings, as well as for judicial review purposes. *See* Ark. Code Ann. §§ 25-15-208(a)(6), 25-15-212(g) (Repl. 2002). The Board found that appellant's work was not incidental to the practice of engineering. The Board's order did not cite the evidence it relied upon in making its finding. Such a finding also requires the Board to interpret the Engineering Act to determine whether appellant's actions fell within the definition of the "practice of engineering" found in section 17-30-101(4)(A) and, if so, determine whether those actions come within the exception from the definition of the

"practice of architecture" found in sections 17-15-102(5) and 17-15-302(a)(1). The California Court of Appeal held that reference to the act defining the practice of architecture is of no significance in ascertaining the nature and scope of the work that a registered engineer is authorized to perform. *Lehmann v. Dalis*, 119 Cal. App. 2d 152, 259 P.2d 727 (1953).

Appellant argues that the Board has no authority to construe the Engineering Act. However, by including the exemption for engineers engaged in work incidental to engineering practice, the Board must be able to refer to the definition of the practice of engineering and construe that definition. The Board did not make any finding on whether appellant's actions were the practice of engineering. Section 17-30-101-(4)(A), which defines the practice of engineering, allows for the inclusion of such architectural work as is incidental to the practice of engineering.

 Arkansas Code Annotated section 17-30-104 allows a licensed engineer to provide planning and design services for buildings intended for accommodation of equipment, vehicles, goods, and/or processes or other utilitarian functions, with human occupancy including office space as required for the support of these functions. Thus, the mere fact that appellant engaged in the planning and design of a building is not enough to prove that he engaged in the unauthorized practice of architecture. Harris and the Board attempted to read a limitation for projects costing less than $100,000 into the exemption for engineers. *See* Ark. Code Ann. § 17-15-302(b)(2). However, there is no similar limitation in the exemption found in § 17-15-102(5)(A)(ii), which provides that an engineer may practice such architectural work as is incidental to the practice of engineering.

Other courts have considered the issue and concluded that the overlap prevents sanctions such as the one imposed in the present case. The Pennsylvania court in *Rosen v. Bureau of Professional & Occupational Affairs*, 763 A.2d 962 (Pa. Commw. 2000), faced a similar problem. A building owner hired a drafting company to survey a building for renovation. The drafting company hired a

professional engineering firm to seal the documents necessary to obtain renovation permits. The experts before the professional licensing board testified that the project at issue was both architectural and engineering in nature. The Pennsylvania code excluded from the definition of the practice of architecture the practice of engineering except as such engineering work is incidental to the practice of architecture. The Pennsylvania code also exempted architectural work that was incidental to engineering from the definition of the practice of engineering. Acknowledging "an ongoing turf war between these two learned professions over the application of their professional disciplines to the design of buildings," the court focused on the purpose of the statutes—to protect the public. 763 A.2d at 965.

The Pennsylvania court determined that the two statutes should be read *in pari materia*. Because the matter involved the area of overlap of the two professions, the architects board was not entitled to a great deal of deference, the court concluded. The Pennsylvania court criticized the architects' board for failing to analyze whether the engineer's work was lawfully encompassed within the practice of engineering. The practice of engineering, the court determined, permitted engineers to design buildings and the fact that the "practice of architecture encompasses the same activities does not diminish the sphere of the practice of engineering." 763 A.2d at 969.

Other jurisdictions support the Pennsylvania position. *State Board for Registration of Architects v. Jones*, 289 Ala. 353, 267 So.2d 427 (1972); *Lehmann v. Dalis, supra; Verich v. Florida State Bd. of Architecture*, 239 So.2d 29 (Fla. Dist. Ct. App. 1970); *Georgia State Bd. for Examination, Qualification and Registration of Architects v. Arnold*, 249 Ga. 593, 292 S.E.2d 830 (1982); *Schmidt v. Kansas Bd. of Technical Professions*, 271 Kan. 206, 21 P.3d 542 (2001). In each of these cases, the respective state architects' licensing board determined that either an engineer or a draftsman had engaged in the practice of architecture without a license. In each case, the courts determined that the statutes at issue defined the practice of these respective disciplines strictly in terms of the types of similar tasks

and activities commonly employed in the design and construction of buildings and struck down the sanctions.

We remand to the circuit court with directions to remand the case to the Board for further fact-finding concerning whether appellant's actions fell within the definition of the practice of engineering.

In his third sub-issue, appellant argues that the $5,000 civil penalty imposed by the Board was arbitrary, capricious, and an abuse of discretion because Ark. Code Ann. § 17-15-203(d)(4)(A)(i) (Repl. 2001), which authorizes the Board to levy a civil penalty not to exceed $5,000 for each violation, does not set out guidelines for the Board to determine the amount of the penalty. Because we are remanding the case, we vacate the civil penalty.

The final sub-issue presented by this appeal is the trial court's decision not to disqualify the Attorney General from representing the Board in this proceeding. Appellant argues that the Attorney General should be disqualified from representing the Board in this case because the Attorney General also represents the State Board of Registration for Professional Engineers and Land Surveyors ("Engineer Board") in disciplinary proceedings against engineers and, therefore, has a conflict of interest requiring disqualification in the present case.

This court reviews a trial court's decision on whether to disqualify an attorney under the abuse-of-discretion standard. *Seeco, Inc. v. Hales*, 334 Ark. 134, 969 S.W.2d 193 (1998); *Berry v. Saline Mem'l Hosp.*, 322 Ark. 182, 907 S.W.2d 736 (1995). An abuse of discretion may be manifested by an erroneous interpretation of the law. *Seeco, supra.* The Model Rules of Professional Conduct are applicable in disqualification proceedings. *Berry v. Saline Mem'l Hosp., supra; see also Norman v. Norman,* 333 Ark. 644, 970 S.W.2d 270 (1998); *Saline Mem'l. Hosp. v. Berry,* 321 Ark. 588, 906 S.W.2d 297 (1995). Disqualification can be warranted in the absence of an ethical violation. It is an available remedy to a trial court "to protect and preserve the integrity of

the attorney-client relationship." *Burnett v. Morgan,* 303 Ark. 150, 155, 794 S.W.2d 145, 148 (1990). Yet, it is a drastic measure to be imposed only where clearly required by the circumstances. *Burnett, supra.*

By statute, the Attorney General "shall be the attorney for all state officials, departments, institutions, and agencies." Ark. Code Ann. § 25-16-702(a) (Repl. 2002). Further, the Attorney General "shall be the legal representative of all state officers, boards, and commissions in all litigation where the interests of the state are involved." Ark. Code Ann. § 25-16-703(a).

In addition to the Attorney General's role as the State's principal civil litigator, the Attorney General is obligated to give the governor, secretary of state, state treasurer, members of the general assembly and other state officials, when called upon, legal advice and formal written opinions regarding the official discharge of their duties. Ark. Code Ann. §§ 25-16-706(a)(1), (3). Thus, "[a]ll office work and advice for state officials, departments, institutions, and agencies shall be given by the Attorney General. . . ." Ark. Code Ann. § 25-16-702(b)(1).

As other courts have noted, the office of the Attorney General is a unique position. *Connecticut Comm'n on Special Revenue v. Connecticut Freedom of Info. Comm'n,* 174 Conn. 308, 387 A.2d 533, 537 (1978). As a member of the bar, the Attorney General is held to high standards of professional conduct. As a constitutional officer, the Attorney General has been entrusted with broad duties as the State's chief civil law officer and is expected to discharge these public duties to the best of his or her abilities. As a lawyer, the Attorney General must by statute provide legal representation to all departments and agencies of state government.

The Model Rules of Professional Conduct contain no specific exemptions for the Attorney General and his assistants. Therefore, as a lawyer and officer of the court, the Attorney General is subject to the Model Rules of Professional Conduct. *Chun v. Board of Trustees of Employees' Ret. Sys.,* 87 Haw. 152, 952 P.2d

1215 (1998); *Attorney General v. Michigan Pub. Serv. Comm'n,* 243 Mich. App. 487, 625 N.W.2d 16 (2000); *State v. Medicine Bird Black Bear White Eagle,* 63 S.W.3d 734 (Tenn. Ct. App. 2001); *Manchin v. Browning,* 170 W.Va. 779, 296 S.E.2d 909 (1982). There is, however, a need for adaptation of the ethics rules in the Model Rules to the Attorney General and his staff in recognition of the uniqueness of the office, the Attorney General's obligation to protect the public interest, and the Attorney General's statutory obligation to represent the various and sometimes conflicting interests of numerous state agencies. *Chun v. Board of Trustees of Employees' Retirement Sys., supra; Attorney General v. Michigan Pub. Serv. Comm'n, supra; see also McCuen v. Harris,* 271 Ark. 863, 611 S.W.2d 503 (1981).

■ By statute, the General Assembly has mandated a relationship akin to the traditional attorney-client relationship between the Attorney General and the state officials and agencies that the Attorney General represents. *Attorney General v. Michigan Pub. Serv. Comm'n, supra; Manchin v. Browning, supra.* Thus, the Attorney General owes a duty of undivided loyalty to his clients and must exercise the utmost good faith to protect their interests. *See McCuen, supra; Norfleet v. Stewart,* 180 Ark. 161, 20 S.W.2d 868 (1929).

■ Unlike lawyers representing private clients, the Attorney General is not necessarily prohibited from representing governmental clients whose interests may be adverse to each other. The majority rule is that the Attorney General, through his assistants, may represent adverse state agencies in intra- governmental disputes. *Chun v. Board of Trustees of Employees' Retirement Sys., supra; Attorney General v. Michigan Pub. Serv. Comm'n, supra; State ex rel. Allain v. Mississippi Pub. Serv. Comm'n,* 418 So.2d 779 (Miss.1982). This rule applies, however, only when the Attorney General is not an actual party to the litigation. *Connecticut Comm'n on Special Revenue v. Connecticut Freedom of Info. Comm'n, supra; Environmental Protection Agency v. Pollution Control Bd.,* 69 Ill.2d 394, 372 N.E.2d 50 (1977); *Superintendent of Ins. v. Attorney General,* 558 A.2d 1197 (Me.1989); *Attorney General v. Michigan*

*Pub. Serv. Comm'n, supra.* The case of *McCuen v. Harris, supra,* cited by appellant, is distinguishable in that it was a local *prosecuting attorney,* not the Attorney General, who was representing both sides in the same litigation. In the present case, the Attorney General is only representing one agency in an administrative proceeding against a private individual. There is no indication that the Engineer Board or the Architecture Board will develop adverse interests in this litigation.

Because the trial court did not abuse its discretion in affirming the Board's refusing to disqualify the Attorney General, we affirm on this point.

Affirmed in part; reversed and remanded in part.

BIRD and BAKER, JJ., agree.