[Civ. No. 9990. First Appellate District, Division Two.—January 9, 1936.]

GEORGE J. C. LANGE et al., Respondents, v. E. J. CURTIN et al., Defendants; FEDERAL FINANCE COMPANY, INC. (a Corporation), et al., Appellants.

Rutan & Mize, Earl E. Johnson and Arch H. Vernon for Appellants.

Warren Lee Pierson & Dee Holder for Respondents.

NOURSE, P. J.—Plaintiffs sued to rescind a promissory note and deed of trust and had judgment. The two corporate defendants alone appeal, but, since the Federal Finance Company is the real party in interest pressing the appeal, we will refer to it herein as the appellant.

On February 25, 1931, plaintiffs executed and delivered to defendant Curtin a promissory note in the sum of $12,000 secured by a deed of trust covering real property located in Glendora, Los Angeles County. After the deed was recorded a mistake was discovered in the description of the property and Curtin procured a forged deed covering the same property which he recorded. About the same time the original note was altered to read "March 2nd" instead of February 25th. Upon the recordation of this deed Curtin procured a certificate of title from a Los Angeles title company which he took to the office of the Finance Company, which was located in Santa Ana, Orange County. He there endeavored to sell the note, but was told that he would have to present further evidence of the validity of the documents. He returned with a written statement signed by both plaintiffs and herein called the "off-set" statement. This document read in part: "We, Geo. J. C. Lange and Rose T. Lange hereby acknowledge the execution of one certain promissory note for the sum of $12,000.00, dated Los Angeles, California, March 2, 1931, . . . Said note secured by deed of trust duly executed by us and acknowledged, etc." The last paragraph, immediately above the signatures, read: "We jointly and severally, hereby acknowledge the execution and delivery of the above-mentioned note and deed of trust securing the same, and state that we have received full consideration therefor, and further state and represent that

the said E. J. Curtin and his assigns are fully authorized and empowered to assign and convey said note and deed of trust to any persons whomsoever they may see fit.''

When this document was presented to the Finance Company it made further objection that the signatures should be verified and Curtin undertook to have this done by the cashier of plaintiffs' bank in Glendora. The agent of the Finance Company made arrangements to meet Curtin at that bank on the afternoon of March 9th. In the forenoon of that day Curtin delivered the paper to the cashier of the Glendora bank, who phoned Mrs. Lange and had her verify her signature. During the day Curtin and Mr. Lange called on the cashier and Mr. Lange then verified his signature. The cashier guaranteed both signatures, affixed his name and the seal of the bank, and then, in the presence of Mr. Lange, delivered the paper to Curtin. The latter immediately walked out of the bank, where he met the representative of the Finance Company to whom he delivered the off-set statement, the promissory note, and the certificate of title, and received in return the Finance Company's check for $11,000.

In explanation of some of the peculiar circumstances involved in these transactions it should be stated here that the plaintiffs had absolute confidence in Curtin—they testified that they signed numerous papers at his request without reading them and without asking what they were. Mr. Lange owned some stock in an Arizona mining company in which Curtin was also interested. He testified that the original deed of trust and note were given Curtin to use as collateral in the purchase of more stock in the mining company and that they were delivered upon Curtin's representation that through the use of these papers he would obtain a profit from this stock of $8,000, which he agreed to pay to the plaintiffs. Curtin testified that no restrictions were placed upon his use of the papers except that he was to use them in manipulation of the mining stock and was to pay plaintiffs the profit therefrom. Concededly no restrictions were made in writing and, so far as appears from the promissory note, it was negotiable for all purposes. Color is given to Mr. Lange's testimony by reference to the off-set agreement executed on March 9th where permission

is there expressly given to assign and convey the note as Curtin desired.

Attention should first be directed to the manner of presentation of the appeal. The appellant states that there is no evidence to support certain findings. It then cites evidence which it claims would demand findings contrary to those made. The respondents criticize the practice and insist that appellant should have printed all the evidence. They then cite authorities which they claim support that argument. We do not refer to these authorities except to say that none is in point. When the claim of the appellant is that there is no evidence to support a finding he is not required, by either code section or rule of court, to print evidence on irrelevant matters. He is required to print the evidence which he desires to call to the attention of the court. If there is no evidence on a particular issue there is nothing for him to print. Conversely, when the attack is made in this manner, and the respondent believes that there is some evidence, it is incumbent upon him to direct the court's· attention to such evidence. Here respondents have followed the not unusual practice of demanding an affirmance because appellant failed to print the evidence. This practice requires the court to examine the entire transcript to see if any such evidence is there. We have made such an examination of this record and are satisfied that the judgment must be reversed because the evidence does not support material findings.

The fraud of Curtin in procuring the execution of the various documents is conceded by appellant. The respondents might have conceded that this appellant had no part in and no knowledge of any of these fraudulent acts as the evidence clearly demonstrates this to be the fact. The Finance Company defended on the grounds that it was an innocent purchaser for value; that plaintiffs were estopped by the off-set statement; and that the plaintiffs should suffer the loss under the doctrine of section 3543 of the Civil Code.

Directing our attention solely to the promissory note, we are unable to find that any of. the elements are lacking which are necessary to make one a holder in due course under the provisions of section 3133 of the Civil Code. It is complete and regular upon its face, duly executed by the

named payors and delivered by them to the named payee. Though an alteration was made as to the date of execution, an alteration favorable to the payors, this was assented to by the payors when they executed the off-set statement in which they expressly affirmed their execution of the note as of the date to which it had been changed. Thus, so far as the note itself is concerned, the appellant may rest strictly on section 3205 of the Civil Code—either that the parties assented to the alteration, or that, as a holder in due course, it could enforce it according to its original tenor.

The appellant took the note before maturity and in good faith. In the first place, the good faith is presumed. (Sec. 1963, subd. 19, Code Civ. Proc.) In the second place, there is not a word of evidence tending to rebut this presumption, but ample evidence to support it. Appellant paid $11,000 in cash for the note so the question of value cannot be controverted.

Then we have the element of notice. The trial court found that appellant took with full notice of all the infirmities. There is no evidence of any character supporting this finding. If the original fraud of Curtin in procuring the execution of the note be treated as one of the infirmities it is conceded that appellant had no knowledge of that and no possible means of obtaining such knowledge. The respondents admit that they executed the note and delivered it to Curtin. If inquiry had been made of them at the time there is no ground for any assumption that they would have denied it. When appellant demanded and received the off-set statement it had the most effective assurance from the makers that the note was all that it purported to be and was free from any claimed infirmities.

We have referred generally to the off-set statement in relation to the matter of alteration and notice of infirmities. Respondents meet appellant's attack by reference to the finding that appellant did not rely on this statement. Every word of evidence on the subject, and every inference which could be reasonably drawn therefrom, demands a finding to the contrary. Curtin was endeavoring to sell both the note and the deed of trust. The latter had been filed for record in the office of the Los Angeles County recorder and was not open to appellant for inspection. The note was regular on its face with the exception that the date of execution had

been changed from February 25th to March 2d. Curtin tendered with the note a certificate of title issued by a title company of Los Angeles showing respondents' title to the property and the deed of trust dated March 2d. Whether it was because of the alteration of the note or because of the inability to examine the original deed of trust, the appellant refused to proceed with the purchase until it received the off-set statement duly signed and verified by the makers of the note and which confirmed in writing both the note as altered and the deed as recorded. All the evidence was to the effect that the deal would not have been made except for this off-set statement and that it was not made until this statement was delivered.

At this point we should refer to another finding of fact upon which respondents place much stress. This is the finding that the off-set statement was not delivered. Every word of evidence is to the contrary. Mr. Lange testified that he met Curtin in the Glendora bank with the cashier; that Curtin asked him to verify his signature to the off-set statement; that after he did so the cashier affixed the seal and handed the paper to Curtin in his presence. Curtin and the cashier gave the same testimony. Mrs. Lange testified that she verified her signature by telephone, called her husband to go to the bank for his verification and left everything to him. Both Curtin and the agent of appellant testified that the off-set statement was delivered to the latter upon receipt of the check in payment for the note.

We refrain from discussing other attacks upon the findings because the opinion is already over-long. It is sufficient to say that the evidence is wholly insufficient to support the findings to the effect that appellant was not a holder in due course of the promissory note and that, for that reason, the judgment must be reversed. As it is impossible to confine the retrial to any particular issue it should be said, in reference to the deed of trust, that under the circumstances presented here the note and deed are not to be treated as one instrument. The note was executed on February 25th and was secured by a valid deed of trust, except for the faulty description of the property. Respondents authorized Curtin to make correction of this defect and, without their knowledge, he forged a new deed of trust. Thus, though the forgery makes this deed of trust void from

the beginning, it had no effect on the note which was executed and secured by the defective deed, neither of which was tainted with forgery. It would appear, therefore, that the negotiability of the note would not be affected by anything that was done in reference to these deeds of trust. (Sec. 3265, Civ. Code.)

For these reasons the new trial should recognize the distinction between the valid note and the forged deed. Whatever rights the appellant may have under the latter must depend upon the effect of the off-set statement. In answer to appellant's claim of estoppel the respondents rely upon the finding that the off-set statement was procured by Curtin through fraud and that the respondents were without knowledge of its contents. This finding of no estoppel is a mixed finding of law and fact and the conclusion that the respondents were not estopped is based largely upon the findings of fact relative to the promissory note which we have said are not supported by the evidence. Because of this situation we make no comment upon the legal questions discussed by the parties relative to the elements necessary to constitute an estoppel of this character. If on a retrial the findings of fact are different, then these questions will answer themselves.

For like reasons we make no extended comment on the application of section 3543 of the Civil Code. Manifestly, if the court should find that both the appellant and the respondents were innocent parties and that the act happened through the negligence of the respondents, the judgment should go for the appellant. Respondents lay great stress on the finding that they were not negligent, while appellant argues from authorities cited that identical acts are negligent as a matter of law. Here again the finding is a mixed one of law and fact and the facts upon which appellant relies as proving the negligence of respondents are so closely interwoven with the facts included in the findings heretofore criticized that it would serve no purpose to discuss the legal questions involved until those facts are settled by appropriate findings.

Appellant makes the further point that, since Curtin was the agent of the plaintiffs, their negligence, particularly in the execution of the off-set statement, must follow as matter of law. There is no conflict in the evidence that

plaintiffs made Curtin their agent to use the note and trust deed in the manipulation of the mining stock. Whether this agency was limited to the use of these papers as collateral, as plaintiffs testified, or was unlimited, as appellant contends, is immaterial. As a general rule the principal is bound by the unauthorized acts of his agent through which an innocent third party has sustained loss unless the limitations of the agency are known or can be readily ascertained. If the failure to limit is due to the carelessness of the principal then the rule of section 3543 applies. Upon this theory the appellant cites authorities holding that the failure of a party to read a document before signing it is negligence. Language supporting that argument is found in *Gridley* v. *Tilson*, 202 Cal. 748 [262 Pac. 322], but this is explained in *Humphrey* v. *Harry H. Culver & Co.*, 220 Cal. 765 [32 Pac. (2d) 630], where it is said that the rule contended for is inapplicable where the failure to read is due to the trickery or fraud of the one procuring the signature. All the cases, however, recognize the distinction between this line of cases where the controversy is between the parties alone, and those cases where the controversy is between an innocent third party and the principal who has clothed his agent with apparent authority. In the latter instances the principal is held to a higher degree of care. This distinction should be borne in mind in the retrial because, though the trial court here found as a fact that plaintiffs were not negligent in the execution of the off-set statement, a review of the evidence discloses that a contrary finding would have been fully supported. (See *Schultz* v. *McLean*, 93 Cal. 329, 357 [28 Pac. (2d) 1053]; *Conklin* v. *Benson*, 159 Cal. 785, 793 [116 Pac. 34, 36 L. R. A. (N. S.) 537]; *Shirley* v. *All Night and Day Bank*, 166 Cal. 50, 55 [134 Pac. 1001]; *Fleming* v. *Dolfin*, 214 Cal. 269 [4 Pac. (2d) 776, 78 A. L. R. 585]; *Smeade* v. *Rosen*, 121 Cal. App. 79, 84 [8 Pac. (2d) 507].)

The judgment is reversed.

Sturtevant, J., and Spence, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 9, 1936.