[Civ. No. 2311.   Fourth Appellate District.—July 28, 1939.]

PAUL M. BAER et al., Appellants, v. W. H. TIPPETT, Respondent.

34

Courtney A. Teel for Appellants.

Gray, Cary, Ames & Driscoll for Respondent.

BARNARD, P. J.—This is an appeal from a judgment of dismissal following an order granting a motion for a nonsuit.

On November 24, 1936, the parties to the action entered into a written contract in which the plaintiffs agreed to prepare plans and specifications, to act in the capacity of architects and to construct a residence and other buildings for the defendant. The preparation of the plans proceeded for several months and up to May 1, 1937, on which date certain changes therein were made. Shortly thereafter, the defendant requested a radical change in the terms of the agreement, which request was refused by the plaintiffs. This led to a situation where no further work was done under the

contract and the plaintiffs brought this action to recover damages in the amount of the compensation provided for in the agreement. A nonsuit was granted and this appeal followed.

The nonsuit was granted on the ground that the contract in question was void as being in violation of the act to regulate the practice of architecture (Stats. 1929, p. 138), which provides that it shall be unlawful for any party to practice architecture in this state without a certificate unless the person furnishing plans, specifications, etc., for a building shall, prior to accepting employment or commencing work on such plans and specifications, inform the other party, in writing, that he is not an architect. ▆ It is well settled that a contract for architectural services to be performed in violation of the terms of the statute is void. (*Binford* v. *Boyd,* 178 Cal. 458 [174 Pac. 56] ; *People* v. *Allied Architects Assn.,* 201 Cal. 428 [257 Pac. 511] ; *Payne* v. *De Vaughn,* 77 Cal. App. 399 [246 Pac. 1069] ; *Jones* v. *Wickstrom,* 92 Cal. App. 292 [268 Pac. 449] ; *Meyer & Holler* v. *Bowman,* 121 Cal. App. 112 [8 Pac. (2d) 936].)

▆ While it is conceded that neither of the appellants were licensed architects it is first contended that the contract here sued upon does not come within the purview of this statute. It is argued that this was merely a building contract between an owner and a licensed general contractor, that the plans and specifications called for were incidental to the main contract, that no charge or obligation arose from the preparation of the plans and specifications since these were to be furnished free, and that this case comes squarely within the rule laid down in *Jones* v. *Tufts,* 118 Cal. App. 694 [5 Pac. (2d) 625]. In that case the plans and specifications had been drawn before the contract was entered into, there was no attempt to recover for architectural services, and the court held that the contract there in question was one to pay for materials and labor used in constructing the building.

In the instant case, the contract is somewhat different. After reciting that the first party desires to erect a certain residence and other buildings, it proceeds:

"Whereas, First Party desires to enter into an agreement with Second Parties, under the terms of which they will prepare the plans and specifications for such residence and

buildings, and will construct same and do such other work as may be necessary to fully carry out the wishes of the First Party."

It then proceeds to set forth what each party agrees to do, the first being as follows:

"Parties of the Second Part shall act in the capacity of architects and builders of the above-mentioned residence and buildings, and shall furnish unto First Party, free of any and all cost or expense whatsoever, with the exception of Printing, to First Party, within ninety (90) days from the date hereof, a complete and detailed set of plans and specifications for such residence and buildings and other work to be done under this contract. Second Parties will, upon request of First Party, within a reasonable number of days from the date of such request, furnish unto First Party, free of any and all cost or expense whatever, with the exception of Printing, to him, such other, further and additional plans and specifications as may be necessary to First Party, in order that said First Party may be fully satisfied with the plan and arrangement of the aforesaid residence and other buildings and work."

The contract then provides that when the first party is satisfied with the plans and specifications he shall indorse his approval in writing thereon; that within thirty days thereafter the second party shall secure bids for necessary lumber and other material; that the second parties shall commence actual construction on or about April 1, 1937, and shall furnish scaffolding, tools and certain other equipment; that they shall construct the building in strict compliance with the plans and specifications; that they shall pursue the work with due diligence and take all necessary precautions to fully protect the buildings and property of the first party; and that they shall devote all of the time necessary "to the work herein contemplated." Among other things, the first party agrees to pay the second parties 12½ per cent of the actual net cost of the work and that this "fee of 12½ per cent of actual net cost shall be the only sum to which Second Parties shall be entitled for their services in connection with the work herein contemplated." It is then provided that the term "actual net cost" shall not include certain things including, among other things, the cost of operating hoisting apparatus, the cost of scaffolds and tools, and the cost of

labor and materials "in connection with the preparation by second parties of the plans and specifications hereinbefore required, with the exception of printing." It is then provided that in the event the second parties should refuse or neglect to diligently proceed with such work, the first party shall have the right to take over the construction, and that in this event the second parties shall receive as their only compensation for their labor and services and for "plans" and "specifications" a sum equal to 12½ per cent of the actual net cost of construction up to that time.

The clause last referred to specifically provides that in the event "a forfeiture be declared" a fee of 12½ per cent of the actual net cost up to that time shall be paid to the appellants as compensation for all of their labor and services, including the preparation of the plans and specifications. The contract had theretofore provided that the fee of 12½ per cent of the actual net cost, which the appellants were to receive, was to be in full compensation for all their services "in connection with the work herein contemplated." The work therein agreed to be done included not only the construction of the buildings, but the preparation of plans and specifications. It does not seem reasonable that the parties, having expressed the intention that in case of part performance and part payment the designated fee should compensate the appellants for the preparation of the plans and specifications as well as for their work in constructing the buildings, should have intended that this fee should not compensate the appellants for the preparation of the plans and specifications in the event the work was all done and the full fee became due. The contract throughout provides that this fee shall be in full compensation for all services performed by the appellants. It recites that the contract is entered into to the end that under its terms the appellant "will prepare the plans and specifications" and will construct the building. The first paragraph of the actual agreement provides that the appellants shall "act in the capacity of architects and builders". One of the capacities in which an architect commonly, and perhaps usually, acts is in overseeing the work of actual construction, checking the materials used, and seeing that the plans and specifications are followed and complied with. This is an important part of the work of an

architect. In fact, usually, the fee of an architect is considerably reduced when that part of his service is not to be performed. This contract contains many provisions indicating that this part of the usual service of an architect was to be performed in this instance, in addition to the work of drawing the plans and specifications. The contract as a whole indicates that the fee agreed upon was to be paid to appellants for all of their service, including both of the kinds of service usually supplied by an architect and the service usually supplied by a contractor.

The appellants, however, maintain that this fee was to cover only their services as a contractor and that the contract did not contravene the statute forbidding the practice of architecture without a license, except upon written notice, because it was therein provided that any services which they were to render as architects were not to be paid for. This is based upon a part of the first paragraph of the actual contract, which provides that the appellants shall furnish to the respondent free of cost, except for the cost of printing, one complete set of plans and specifications. The appellants interpret this as providing that there shall be no compensation for architectural services. We think it may not be so taken, especially since it must be considered in connection with many other parts of the contract which indicate a contrary intention. Even if it were provided that no charge should be based upon the preparation of the plans and specifications there would still remain many things to be done by the appellants in the doing of which they would act in the capacity of architects, as that expression is usually understood and accepted. Moreover, we think the portion of the contract thus relied upon does not provide that the preparation of the plans and specifications shall be done free of cost to the respondent. Aside from the other matters which we have referred to, indicating a contrary intention, this portion of the contract merely provides that the respondent shall receive free of cost, except for printing, one complete set of plans and specifications. This is far from saying that no compensation is to be paid for the work of preparing all of the plans and specifications. That work is considerable, it ran over a period of many months in this instance and the appellants state in their brief that, at the time the contract was broken, the appellants had performed "the major por-

tion of all they undertook so to do under the terms of said agreement". Only one set of plans and specifications was to be furnished the respondent and he was to pay for the printing of that set. The printing of one set of plans and specifications after they have been completed is a small matter in comparison with the work involved in preparing such plans and specifications. Not only did the general terms of the contract indicate that the work of preparing the plans and specifications was included in the compensation provided for, but the clause of the contract relied upon by the appellants, by specifically providing that only the one set shall be furnished free of cost, indicates that the numerous other sets which would be required in connection with the construction of the buildings, and the work involved in preparing the plans and specifications originally, were not to be furnished free. The reasonable construction of the contract as a whole is that all of these services, which unquestionably constitute the practice of architecture, were, together with the other service to be rendered by the appellants as contractors, to be paid for by the fee named in the contract. The contract called for architectural services which were to be paid for and was, therefore, within the purview of the statute.

It is next contended that in any event the requirements of the statute were complied with since the appellants had the plans checked by a licensed architect. In this connection the appellant Paul M. Baer testified that he had a licensed architect check and approve the plans after they were prepared, that this architect "spent some hours checking the plans", and that "we paid him $15 for this service". The testimony shows that the preparation of the plans extended over a period of nearly six months and the appellant Harold E. S. Baer testified "I prepared the plans and specifications with the assistance of a draftsman named Simons, who has worked in many architects' offices." We think this is not a sufficient compliance with the statute. (*Meyer & Holler* v. *Bowman, supra.*)

The next contention is that the appellants sufficiently complied with the statute by handing the respondent their business card, which read: "Paul M. Baer & Son, General Contractors." The fact that they were contractors does not necessarily indicate that they were not architects and the giving of this card cannot be held to have been a sufficient com-

pliance with the plain requirement of the statute that the other party be notified in writing that the person proposing to furnish the plans and specifications was not an architect.

█ It is next urged that the statute, in requiring written notice, is unconstitutional. It is argued that the statute could only be upheld upon the theory that it was in the public interest in that it tended to prevent the dangers which might arise from defects in plans or construction (citing *Binford* v. *Boyd, supra*), and that that object could be sufficiently attained by requiring merely an oral notice. We are not impressed with this argument. In the case referred to, the constitutionality of the statute as it then existed was upheld and it cannot be said that the object sought to be attained is not furthered by providing that the required notice shall be given in a definite form that may remove any doubt as to whether or not it was given.

█ It is further urged that the respondent waived the benefits of this statute. The statute in question was adopted as a matter of public policy and for the purpose of furthering the public interest. Under such circumstances there can be no waiver of the kind relied on. (*Berka* v. *Woodward,* 125 Cal. 119 [57 Pac. 777, 73 Am. St. Rep. 31, 45 L. R. A. 420].)

█ Some contention is made in the closing brief that the contract here in question is severable and divisible, and that the appellants in any event were entitled to recover with respect to that part of the contract which called for their services as contractors. The contract had but a single object, construction of certain buildings, and the two kinds of services called for were thoroughly intermingled. The parts are interdependent and there is a common consideration which is clearly based upon a completed whole. In our opinion, the contract was entire, and not severable. (*Kennard* v. *Keeler,* 93 Cal. App. 722 [269 Pac. 1114].)

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.