[Civ. Nos. 35540, 36118. Second Dist., Div. Five. Oct. 19, 1970.]

MARTIN MEDAK, Plaintiff and Respondent, v.
KRIS E. COX et al., Defendants and Appellants.

(Two Cases.)

**COUNSEL**

Hastings, Blanchard & Hastings and Robert G. Blanchard for Defendants and Appellants.

Chenoweth, Hall & Kent and Richard J. Chenoweth for Plaintiff and Respondent.

**OPINION**

**AISO, J.**—Two separate appeals have been brought by defendants Kris E. Cox and LeRoy B. Poulin (James T. Carman has not appealed) from two purported judgments in superior court case No. SOC 15732.

### 2D CIV. No. 35540

This appeal was taken from a judgment entered on February 19, 1969, following a trial by the court. After a motion for new trial had been made, the court entered the following order on April 17, 1969:

"Nature of Proceedings: Defendants and cross-complainants, Kris T. [*sic*] Cox and Leroy B. Poulin, motion for new trial.

"Findings will be modified by deleting therefrom from paragraph 2 of the findings to read 'prior to trial, James T. Carman was adjudicated as bankrupt' and there is added to paragraph one of the conclusions following words costs 'against defendants James T. Carman, Kris E. Cox, and Leroy B. Poulin.'

"Plaintiff's attorney to present amended judgment, and show on a motion for new trial the court modifies findings and conclusions and ordered this judgment and follow it up with the additional names."

The amended findings and judgment were filed on July 23, 1969, and by court order the findings filed on February 14, 1969, and judgment entered on February 19, 1969, were vacated. A new judgment was entered on July 24, 1969. Another notice of appeal was filed on September 18, 1969 (2d Civ. No. 36118).

██ Although there is no explicit statement to the effect, it is clear that the trial court was proceeding under the authority granted it under Code of Civil Procedure section 662 (see *Warren Southwest, Inc.* v. *Wicks* (1969) 276 Cal.App.2d 152, 155 [80 Cal.Rptr. 723]; *Gardner* v. *Rich Mfg. Co.* (1945) 68 Cal.App.2d 725, 738-739 [158 P.2d 23]).

██ The proper procedure is for the trial court to deny the motion for new trial and grant the alternative relief stated under Code of Civil Procedure section 662, i.e., a modification of findings and judgment. (*Spier* v. *Lang* (1935) 4 Cal.2d 711, 714 [53 P.2d 138]; *Bureau of Welfare, etc.* v. *Drapeau* (1937) 21 Cal.App.2d 138, 150 [68 P.2d 998].) ██ Here there is no statement as to the status of the new trial motion in the order. Nevertheless inasmuch as the court clearly intended to vacate the first findings and judgment and subsequently did, "the matter was returned to the posture in which it was prior to entry of judgment, the motion for new trial had been disposed of and the provisions of section 660 [Code Civ. Proc.] no longer applied." (*Taormino* v. *Denny* (1970) 1 Cal.3d 679, 684 [83 Cal.Rptr. 359, 463 P.2d 711].) ██ The 60-day period prescribed in section 660 is satisfied on the date when the order is entered on the minutes regardless of the date when the implementing papers are filed. (*Spier* v. *Lang, supra.*) ██ Accordingly the new judgment entered July 24, 1969, superseded the judgment entered February 19, 1969. Defendants' appeal from the superseded judgment is therefore a nullity and will be dismissed. (*Pacific Home* v. *County of Los Angeles* (1953) 41 Cal. 2d 855, 858 [264 P.2d 544].)

## 2D CIV. No. 36118

On the appeal from the judgment entered July 24, 1969, defendants Cox and Poulin raise several issues.

This action was filed by plaintiff against James T. Carman, Kris E. Cox and LeRoy B. Poulin doing business as Claremont Crest Company (hereinafter "Claremont") for foreclosure of a mechanic's lien. All parties answered; however, Carman's attorneys withdrew shortly before trial and he did not appear in any further proceedings. Cox and Poulin cross-complained (later treated as counterclaim) for money paid to plaintiff for services rendered (unrelated to those involved in the complaint). Judgment was entered against Carman, Cox and Poulin for $8,175[1] on the complaint. Plaintiff also had judgment on the cross-complaint (counterclaim) by Cox and Poulin. Only Cox and Poulin are appealing and they will hereafter be referred to as defendants.

Plaintiff's suit is one for services rendered under a contract signed by himself and Carman. This contract is headed "I.R.C. Development Corporation—Subcontract Agreement" and is a printed form with the appropriate additions describing plaintiff's compensation and the design work to be done. It is signed by Martin Medak, Architect, and Claremont by Carman. The imprinted "I.R.C. Development Corp." (hereafter "IRC") on the form where it is to be signed is "Xed" out and "Claremont Crest Company" typed in its place. Provision is made for the signatures of Carman, Cox and Poulin to be placed under Claremont, but only Carman signed. Plaintiff testified that Carman told him that the other two signatures were not necessary.

Claremont is a joint venture created to construct single family houses on property owned by Cox and Poulin and is composed of IRC and the Copox Company, a partnership composed of Cox and Poulin. Carman was president of IRC and authorized to act on its behalf, as well as being a principal shareholder.

On appeal defendants' first claim that the contract "on which plaintiff relies" is not binding upon them.

The court found that the management and control of the joint venture was vested in defendants jointly and equally and that it was the duty of Carman "to do all things necessary to construct homes on the property."

There is direct evidence that Carman was president of IRC and that

---

[1]There was no disposition of the prayer in the complaint that the property involved be foreclosed upon since it appeared at trial that the construction lender had already foreclosed.

this fact was known to defendants. In both the "Certificate of Business, Fictitious Name" and "Statement of Partnership," recorded and published with respect to Claremont, Carman executed the documents on behalf of IRC as president. As president of IRC, Carman was authorized to enter into ordinary contracts of employment to further the interests of IRC. (*Grummet* v. *Fresno Glazed Cement Pipe Co.* (1919) 181 Cal. 509, 513 [185 P.388]; see *Memorial Hosp. Assn.* v. *Pacific Grape etc. Co.* (1955) 45 Cal.2d 634, 639 [290 P.2d 481, 50 A.L.R.2d 442].) Hence it was reasonable for the court to conclude that IRC would act through its president, Carman, in carrying out its part of the Claremont joint venture agreement.

In the joint venture agreement it was stated that "IRC shall do all things and perform all services necessary to create a subdivision on the land including . . . the construction of houses thereon, together with the procuring of subcontractors and the necessary supervision. . . ." The agreement further states that "No management decisions shall be made, no agreements entered into and no obligations assumed by the joint venture without the consent of both parties." ▮ Assuming that the latter clause controls, there is sufficient evidence to support the conclusion that plaintiff did not know that IRC (and hence Carman) acting alone did not have authority to enter into a contract binding Claremont. Plaintiff, Carman, and Cox (a copartner of Copox) discussed preliminary plans and plaintiff was introduced to Cox as the man who was going to draw the house plans for the subdivision. There was no statement by Cox at this time of any limitation of authority on the part of IRC to enter into contracts relating to the subdivision. In fact the evidence indicates that the first time Cox objected to Carman's employment of plaintiff was when plaintiff requested payment about a year later.

▮ This case is therefore clearly governed by Corporations Code section 15009, subdivision (1)[2] which states: "Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority."

[2]The rules governing liability of partners for partnership debts also apply to joint ventures and "the rule has been fairly well established that each joint venturer has authority to bind the others in making contracts reasonably necessary to carry out the enterprise." (*Smalley* v. *Baker* (1968) 262 Cal.App.2d 824, 837 [69 Cal.Rptr. 521]; see *Zeibak* v. *Nasser* (1938) 12 Cal.2d 1 [82 P.2d 375]; *Cahill Bros., Inc.* v. *Clementina Co.* (1962) 208 Cal.App.2d 367, 387-388 [25 Cal.Rptr. 301].)

Therefore the contract signed only by Carman was sufficient to bind the partnership or joint venture named Claremont, and hence IRC and Copox jointly (Corp. Code, § 15015). Consequently, judgment against Cox and Poulin as copartners of Copox as well as against Carman was proper.

■ Defendants next contend that plaintiff is not a licensed architect (or building designer) and therefore not entitled to sue for services rendered. Plaintiff replies by citing Business and Professions Code section 5537 which states: "This chapter [referring to the chapter providing for architects' licenses] does not prohibit any person from preparing plans, drawings, or specifications for: . . . (c) Single family dwellings of wood frame construction not more than two stories high."

This is a case of first impression concerning the interpretation of this section enacted in 1963.

Defendants do not argue that the homes were not "single family dwellings of wood frame construction not more than two stories high." Rather they argue that this section does not apply because the plans involved a whole subdivision and in addition plaintiff prepared a plot plan of this subdivision. The plot plan is superimposed, for blueprinting, over a "Grading Plan" prepared by civil engineers and merely places the houses on the lots. The court aptly summarized the testimony regarding the plot plan by noting that it was an "integral part of the plan for a single-family dwelling." In ruling upon a motion for judgment (Code Civ. Proc., § 631.8) based on this point, the trial court concluded that the plot plan also fell within the exemption provided by section 5537. We accept this conclusion by the trial court.

■ Section 5537 does not place any restriction on the number of houses that a person may design without an architect's license. No difference results from permitting a person to design an exempt type of house for many separate patrons as against allowing him to design many units for one customer. ■ In the absence of legislative direction, we decline to impose any such restriction where there is no indication that plaintiff did any more than design just the houses of the subdivision.

■ Defendants also claim that plaintiff is barred from relief under the maxim that "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer" (Civ. Code, § 3543). To apply this rule it must appear that negligence of one of the parties must have been the cause of the loss. (*Freitas* v. *Marsh* (1945) 70 Cal.App.2d 711, 713 [161 P.2d 565].) ■ In the instant case possible negligence on the part of plaintiff was not raised in defendants' answer. There was no request for a finding on this issue. The court would have been fully justified in finding that defendants' failure to notify plaintiff of

[Oct. 1970]

the limits of Carman's authority was negligence on their part. (See *Lange* v. *Curtin* (1936) 11 Cal.App.2d 161, 169 [53 P.2d 185]; Corp. Code, § 15009, subd. (1).) Thus the claim raised for the first time on appeal that Civil Code section 3543 bars plaintiff's recovery has no merit.

 Finally, defendants argue that the findings, as a matter of law, do not support the judgment for plaintiff on the counterclaim. The counterclaim was brought to recover money paid to plaintiff for his architectural services in designing an industrial building. These services admittedly did not fall within the exception provided by Business and Professions Code section 5537 and plaintiff could not have recovered for rendering these services in the first instance. (See *Baer* v. *Tippett* (1939) 34 Cal.App.2d 33, 35 [92 P.2d 1028].)

Here defendants knew they were dealing with an unlicensed architect before they hired him to design their building. The applicable principle is stated in *Bank of Orland* v. *Harlan* (1922) 188 Cal. 413, 421 [206 P. 75]: "The rule that a contract which is against public policy, good morals, or the express mandate of law cannot be made the basis of either legal or equitable relief in the courts requires no citation of authorities. And where the parties are *in pari delicto* neither can recover. It is the policy of the law to leave the parties precisely where it finds them." (See also Rest., Contracts, § 598.) Although we have uncovered no case dealing with architect's fees paid under an invalid contract, the rule stated has been applied in a variety of situations.[3]

*Owens* v. *Haslett* (1950) 98 Cal.App.2d 829 [221 P.2d 252] presented a situation similar to this case. Plaintiff therein, an unlicensed contractor, contracted with the defendant to build a house. Plaintiff sued for damages for breach of contract and the defendant cross-complained for money paid under the contract. On the cross-complaint, the court stated that if the defendant was justifiably ignorant of the facts (i.e., lack of license) which made the contract illegal, she would not be barred from recovering consideration previously paid. (See also Rest., Contracts, § 599 (a).)

 The same principles apply here except that here defendants knew facts indicative of the illegality of the contract to design the industrial building when they entered into it. They cannot now urge that illegality to recoup

---

[3]See, *e.g.*: *Wells* v. *Comstock* (1956) 46 Cal.2d 528, 532 [297 P.2d 961] (illegal stock transaction); *Palm Springs Paint Co.* v. *Arenas* (1966) 242 Cal.App.2d 682, 688 [51 Cal.Rptr. 747] (illegal agreement with Indian regarding sale of land); *Richardson* v. *Roberts* (1962) 210 Cal.App.2d 603, 606-607 [26 Cal.Rptr. 829] (action by real estate broker to recover fee split with unlicensed broker); *Mansfield* v. *Hyde* (1952) 112 Cal.App.2d 133, 139 [245 P.2d 577] (illegal boarding home contract).

payments already made under it. Here defendants had received an adequate *quid pro quo* for the monies they now seek to recover. No unjust enrichment to plaintiff results which would justify an exception to the general rule of *pari delicto*. (Cf. *Tri-Q, Inc.* v. *Sta-Hi Corp.* (1965) 63 Cal.2d 199, 220-221 [45 Cal.Rptr. 878, 404 P.2d 486].)

Defendants' appeal from the judgment entered February 19, 1969, is dismissed. The judgment entered July 24, 1969, is affirmed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied November 13, 1970.