[Civ. No. 16804. Fourth Dist., Div. One. Mar. 6, 1979.]

GEORGE T. FELIX et al., Plaintiffs and Appellants, v.
MORTY ZLOTOFF, Defendant and Respondent.

## COUNSEL

Robert D. MacFarlane for Plaintiffs and Appellants.

Nissenberg & Nissenberg and Merel G. Nissenberg for Defendant and Respondent.

## OPINION

**STANIFORTH, J.**—Plaintiff George T. Felix (Felix) appeals from an order dismissing his complaint after the trial court sustained defendant Morty Zlotoff's (Zlotoff) demurrer without leave to amend. Felix, a licensed building designer, alleged in alternating pleading counts breach of implied contract (count one), of oral contract (count two), and of an unsigned written contract (count three). He claims he prepared, at the request of Zlotoff, preliminary plans and specifications for 37 condominium units and alleges their reasonable value to be $17,000 for which he has not been paid. The contract is attached as exhibit A to the complaint. It is unsigned and does not bear the registration number of a licensed building designer.

Zlotoff's general demurrer was grounded upon Business and Professions Code section 5536.1, subdivision (b), which provides: "All persons preparing plans, specifications, and instruments of service for others shall sign such plans, specifications, and other instruments of

service and all contracts therefor, and if certified or registered under this chapter shall note their certificate or registered number. Failure of any person to comply with this subdivision is a misdemeanor punishable as provided in subdivision (a) of this section. This subdivision shall not apply to employees of persons certificated or registered under this chapter while acting within the course of their employment."

Zlotoff's contention, accepted by the trial court, was that a contract in violation of a regulatory statute is void. He cites the early case of *Smith* v. *Bach*, 183 Cal. 259 [191 P. 14], where the Supreme Court stated at pages 262-263: "The imposition by statute of a penalty implies a prohibition of the act to which the penalty is attached, and a contract founded upon such act is void."[1] He also relied upon a more recent case, *Bennett* v. *Hayes*, 53 Cal.App.3d 700, 704 [125 Cal.Rptr. 825], for the proposition that violation of the code provision precludes recovery on any basis, including quantum meruit.

Zlotoff next contends this statute impliedly prohibits oral and implied contracts for the preparation of plans and specifications, because such contracts, being unwritten, cannot be signed by the building designer and the certifications number cannot be noted on them. He maintains this is the necessary interpretation of the statute's language "and all contracts therefor."

Felix asserts oral contracts (as well as implied in fact and implied in law [quasi contracts]) are lawful, need not be written, and therefore, need not be signed, nor bear a registration number. Moreover, contends Felix, even if a violation of Business and Professions Code section 5536.1 occurred, contractual recovery should be granted, because the Legislature intended the criminal sanctions to be the exclusive penalty for violation of the statute. He asserts his substantial compliance with the statute is sufficient basis on which to enforce the contract. Finally he urges the statute should be construed to avoid a forfeiture.

## DISCUSSION

Business and Professions Code section 5536.1 must be construed with due regard to the legislative purpose sought to be accomplished. (*Cedars of Lebanon Hosp.* v. *County of L.A.,* 35 Cal.2d 729, 734-735 [221 P.2d 31,

---

[1]Business and Professions Code section 5536.1, subdivision (a), provides for a fine of $50 to $500 or a maximum six-month imprisonment in the county jail, or both for violation of subdivision (b).

15 A.L.R.2d 1045]; *Rushing* v. *Powell*, 61 Cal.App.3d 597, 603-604 [130 Cal.Rptr. 110].) The legislative intent should be gathered from the whole act rather than from isolated parts or words. (*Rushing* v. *Powell, supra*, at p. 604; *People* v. *King*, 115 Cal.App.2d Supp. 875, 878 [252 P.2d 78].) Application of the legislative intent may require a variation from the strict letter of the statute.

■ The Supreme Court in *Friends of Mammoth* v. *Board of Supervisors*, 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049], stated: "Once a particular legislative intent has been ascertained, it must be given effect ' "even though it may not be consistent with the strict letter of the statute." ' [Citation.] As we stated nearly a half century ago in *In re Haines* (1925) 195 Cal. 605, 613 [234 P. 883]: ' "The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute; and if the words are sufficiently flexible to admit of some other construction it is to be adopted to effectuate that intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." ' "

The point of beginning in the search for legislative intent is the plain usual, ordinary import of the words themselves. (*Moyer* v. *Workmen's Comp. Appeals Bd.*, 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

Section 5536.1 (enacted 1963) is part of an overall regulatory licensing scheme concerning architects (Bus. & Prof. Code, § 5500.1) and building designers (Bus. & Prof. Code, § 5500.3). The purpose of the Regulatory Act (Bus. & Prof. Code, § 5500 et seq.) was stated in section 1 of Statutes 1963, chapter 2133, page 4432: "In the interest of public health, safety and welfare, a more definite, effective, and enforceable law in the fields of architecture and building design, as set forth in this chapter, is deemed essential by the Legislature and is adopted to maintain the high standards of architectural practice, and, insofar as practical, to maintain the rights of those unlicensed persons who were legally earning their livelihood by engaging in building design at the time of enactment of this act."

The act defines the practice of architecture (Bus. & Prof. Code, § 5500.1), builder (Bus. & Prof. Code, § 5500.2) and designer (Bus. & Prof. Code, § 5500.3) and established a Board of Architectural Examiners (Bus. & Prof. Code, § 5510) with authority to formulate rules and regulations for certification to practice architecture (Bus. & Prof. Code, § 5526) and for registration to engage in the practice of building design

(Bus. & Prof. Code, § 5500.2), to prosecute persons "guilty of violating the provisions of this chapter" (Bus. & Prof. Code, § 5525) and to seek injunctive relief (Bus. & Prof. Code, § 5527).

The act provides penalties for unlicensed practitioners of architecture (Bus. & Prof. Code, § 5536) or the unregistered persons who "practice building design" (Bus. & Prof. Code, § 5536.1, subd. (a), for failure of a building designer registered under the act to "note their . . . registered number" on plans, specifications and instruments of service prepared by him (Bus. & Prof. Code, § 5536.1, subd. (b)). The act does not otherwise deal with contracts for architectural or building designer's services.

■ The plain language of the act, and specifically section 5536.1, subdivision (b), discloses no expressed legislative intent to void, or render unenforceable, an oral, implied in fact or implied in law contract of an otherwise lawfully registered building designer for preparation of specification plans, instruments for or contracting with respect to a building authorized by law.

Zlotoff would *amend* the act to include such a prohibition. Specifically he would require (1) that *all* contracts for services of a registered building designer be in writing, and (2) add a further penalty of nonenforceability of an oral or implied in fact or law contract.

Such interpretation ignores the hornbook rules as well as California statutes recognizing the validity and enforceability of express contracts whether oral or written (Civ. Code, § 1620) implied in fact where the intent is manifested by conduct (Civ. Code, § 1621) or implied in law contract (quasi contracts) (see 1 Witkin, Summary of Cal. Law (8th ed. 1973) Quasi-Contracts, § 28, p. 45) and the rule that all contracts may be oral except those as are specifically required by statute to be in writing (Civ. Code, § 1622).

Nor does Zlotoff cite any case authority authorizing on public policy grounds—or any other basis—the interpretation of section 5536.1, subdivision (b), he urges upon us. *Baer* v. *Tippett,* 34 Cal.App.2d 33 [92 P.2d 1028] is not in point. *Baer* factually involves the practices of architecture by an *unlicensed* person who did not inform the other party in writing of his nonlicensed status before accepting employment. (*Id.,* at p. 35.)

To the same effect see *Force* v. *Hart,* 209 Cal. 600 [289 P. 828]; *Jones* v. *Wickstrom,* 92 Cal.App. 292 [268 P. 449]; *Medak* v. *Cox,* 12 Cal.App.3d

70, 78 [90 Cal.Rptr. 452]. Nor is *Bennett* v. *Hayes, supra,* 53 Cal.App.3d 700, persuasive in holding an automobile repair shop cannot recover even on a quantum meriut basis for repair work done on an automobile where the repairer had failed to put the estimate for the work in writing as required by Business and Professions Code section 9884.9. The court held (*id.,* at p. 704) the repairman violated a section "enacted for the protection of . . . his customer." The legislative requirement was a direct attempt to discourage misleading fraudulent, inflated garage repair bills by requiring the estimate of cost in advance in writing. No similar clear legislative purpose is apparent underlying section 5536.1, subdivision (b), nor does Zlotoff enlighten us in this otherwise obscure area. Similar cases declaring void the sale of corporate stock, in violation of terms of a permit of the Commissioner of Corporations (*Stonehocker* v. *Cassano,* 154 Cal.App.2d 732, 736 [316 P.2d 717]) are based on the obvious public policy aimed at fraudulent stock sales.

A dispassionate reading of the section in controversy, in its statutory matrix, leads to this conclusion: The act was intended to insure that only competent individuals design buildings; it is the existence of the license, the fact of registration, that is the crucial feature. The role of the license is explained in *Latipac, Inc.* v. *Superior Court,* 64 Cal.2d 278 [49 Cal.Rptr. 676, 411 P.2d 564] where the Supreme Court said at page 282: "The key moment of time when the existence of the license becomes determinative is the time when the other party to the agreement must decide whether the contractor possesses the requisite responsibility and competence and whether he should, in the first instance, enter into the relationship. The license, as an official confirmation of the contractor's responsibility and experience, then plays its important role." *Latipac* involved a contractor licensed at the time of contracting but who did not hold a license for a portion of the contract period. The Supreme Court authorized recovery despite lack of full compliance with the licensing statute and in face of section 7031 of the Business and Professions Code denying a person access to court "without alleging and proving that he was a duly licensed contractor at all times . . . ." No similar legislative barrier faces the building designer or architect. If the Legislature had intended this further penalty, denial of access to court processes, it should have expressed such intent by clear and specific language.

██ It must be conceded that a general rule requires courts—even absent a statutory prohibition such as section 7031—to withhold relief under the terms of an illegal contract or agreement which is violative of

public policy. (*Moore* v. *Moore,* 130 Cal. 110 [62 P. 294]; *Tri-Q, Inc.* v. *Sta-Hi Corp.,* 63 Cal.2d 199, 218 [45 Cal.Rptr. 878, 404 P.2d 486].)

However, as was said in *Norwood* v. *Judd,* 93 Cal.App.2d 276, at pages 288-289 [209 P.2d 24]: "The rule that the courts will not lend their aid to the enforcement of an illegal agreement or one against public policy is fundamentally sound. The rule was conceived for the purposes of protecting the public and the courts from imposition. It is a rule predicated upon sound public policy. But the courts should not be so enamored with the Latin phrase '*in pari delicto*' that they blindly extend the rule to every case where illegality appears somewhere in the transaction. The fundamental purpose of the rule must always be kept in mind, and the realities of the situation must be considered. Where, by applying the rule, the public cannot be protected because the transaction has been completed, where no serious moral turpitude is involved, where the defendant is the one guilty of the greatest moral fault, and where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff, the rule should not be applied."

A further exception to the general rule is set forth in *Lewis & Queen* v. *N. M. Ball Sons,* 48 Cal.2d 141 [308 P.2d 713], where the court, after first setting forth the policy behind the general rule, stated at page 151: "In some cases, . . . effective deterrence is best realized by enforcing the plaintiff's claim rather than leaving the defendant in possession of the benefit; or the forfeiture resulting from unenforceability is disproportionately harsh considering the nature of the illegality. In each case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved." And this court, in the recent decision of *Vitek, Inc.* v. *Alvarado Ice Palace, Inc.,* 34 Cal.App.3d 586 [110 Cal.Rptr. 86], upheld recovery by a contractor who had signed a building contract after his contractor's license had expired and before the license was renewed. This court held: "Undoubtedly, the general rule in this state is that when it appears there is a violation of a regulating statute, the prescribed penalty is the equivalent of an express prohibition and a contract made contrary to its terms is void even though the statute does not pronounce the fact. [Citations.] The rule is not without exception, however, and before the rule can be applied in any case of a statute prohibiting or enjoining things to be done, with a prohibition or a penalty, or a penalty only for doing a thing which it forbids, the statute must be examined as a whole, to find out whether the makers meant a contract in contravention of it should be void [citations]" (*id.,* at pp. 591-592) and concluded: "We are not involved in aiding an

incompetent or dishonest artisan. Nor can it be seriously argued that the statutory purposes of public protection would be frustrated by allowing enforcement of a contract fully performed by a licensed contractor whose qualifications for a license were unquestioned and whose only disability was signing the contract one business day before the license was issued. The defendant received full value under the terms of the contract. The licensing law should not be used as a shield for the avoidance of a just obligation [citation]." (*Id.*, at pp. 594-595.)

 Factually, we here confront—if we accept Zlotoff's interpretation of section 5536.1, subdivision (b), as a flat prohibition against enforcement of any specie of contract, except a written one for a building designer's services—at most a technical violation of the procedural rule. Felix was a registered building designer. He is not charged with defective work. A public policy aimed at protecting the public from incompetent improperly trained designers of buildings is not present. The public policy designed to prevent fraudulent or sharp practices by a trade or profession is lacking. The effect of denying Felix access to the courts, where the Legislature has not seen fit to do so, is to decree a forfeiture, to authorize unjust enrichment without any counterbalancing discernable public policy which justifies such drastic medicine. Forfeitures are viewed with legislative and judicial disfavor. (Civ. Code, § 1442; *Loughan v. Harger-Haldeman*, 184 Cal.App.2d 495 [7 Cal.Rptr. 581].)

As the Supreme Court observed: "Fidelity to precedent and considerations of equity each preclude us from requiring the wholly gratuitous enrichment of defendant at the expense of plaintiff and its creditors. We are not disposed to decree vast forfeitures in the aid of no ascertainable public policy." (*Latipac, Inc. v. Superior Court, supra,* 64 Cal.2d 278, 287.)

Judgment reversed.

Cologne, Acting P. J., and Wiener, J., concurred.